## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RANDALL E. FLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-369-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

The claimant Randall E. Flowers requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]  Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 13, 1953, and was fifty-four years old at the time of the most recent administrative hearing. (Tr. 1160). He graduated high school (Tr. 1161), and has worked as a welder, dump truck driver, and rock crusher tender (Tr. 738). The claimant alleges that he has been unable to work since January 15, 1997 due to his heart, lungs, back, knees, ankles, and nerves. (Tr. 113, 133).

## Procedural History

On July 13, 1998, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated June 18, 1998. (Tr. 75-83). The Appeals Council remanded the case, and ALJ Bruce Evans conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated August 26, 1999. (Tr. 341-355). The Appeals Council again remanded the case back to ALJ Evans, who held another hearing and again determined that the claimant was not disabled in a written opinion dated September 24, 2001. (Tr. 478-491). The Appeals Council again remanded the case, and ALJ Michael Kirkpatrick held a hearing and determined that the claimant was not disabled in a written opinion dated August 7, 2004. (Tr. 22-37). The Appeals Council then denied review , but this

Court reversed on appeal in Case No. CIV-06-38-SPS and remanded the case for further proceedings.  A fifth administrative hearing before ALJ Kirkpatrick resulted in another denial of benefits on May 5, 2008.  (Tr. 718-740).  The Appeals Council again denied review on August 3, 2010, so the ALJ's May 5, 2008 opinion represents the Commissioner's final decision for purposes of this appeal.  See 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday, but was additionally limited to performing simple routine unskilled job tasks.  (Tr. 725).  The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, housekeeper/cleaner, bakery racker, and bagger.  (Tr. 739).

### Review

The claimant contends that the ALJ erred: (1) by failing to assign controlling weight to the opinion of a treating physician, Dr. McAlister; (2) by additionally failing to articulate what weight he gave to Dr. McAlister's opinion; and (3) by rejecting therapist Ken Gandy's opinion without properly assessing it as an "other source opinion."  The

undersigned Magistrate Judge finds the claimant's contentions unpersuasive for the following reasons.

The claimant's extensive medical records have been thoroughly documented in the previous ALJ opinions and the earlier District Court opinion. The medical evidence reveals that the claimant has the severe impairments of chronic obstructive pulmonary disease, degenerative arthritis, depression, anxiety disorder, and excessive use of prescription medication. (Tr. 723). As relevant to this appeal, the claimant received treatment at the Mental Health Services of Southern Oklahoma during 1998 and 1999. Therapist Ken Gandy counseled the claimant, and Dr. McAlister oversaw his medical treatment at the facility. Dr. McAlister signed as the physician on a number of medication records for the claimant, while Mr. Gandy signed these same documents as the primary counselor. (Tr. 197, 199-200, 202, 206-208, 252, 254, 400). Dr. McAlister also completed a Medical Source Statement ("MSS") as to the claimant's mental health status, which noted that the claimant had a majority of "marked" impairments, and nothing less than moderate impairments, in every category. (Tr. 250-251). He provided no additional remarks to his MSS statement. On every other record where his signature appears, Mr. Gandy's signature appears as well. Mr. Gandy's treatment records span a number of counseling sessions, and on several occasions he assigned the claimant Global Assessment of Functioning scores, including several scores of 45, once noting that the claimant's treatment compliance was "horrible." (Tr. 192, 397-399). Mr. Gandy also completed an MSS three months after Dr. McAlister did, and it noted that the claimant was mostly moderately impaired, with a few marked impairments, and no mild or

nonexistent impairments in any of the categories. (Tr. 270-271). The same month Mr. Gandy completed his MSS, another counselor at the same facility saw the claimant and noted that he would no longer prescribe Valium to the claimant because the claimant had also been getting it at the VA. (Tr. 395).

In his most recent written opinion, the ALJ declined to assign controlling weight to Dr. McAlister's opinion and found that his opinion had "little probative value" because it was inconsistent with the majority of the medical evidence. Additionally, the ALJ stated that he was giving due consideration to the factors in 20 C.F.R. §§ 404.1527 and 416.927, as well as the factors in *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003). The ALJ noted that Dr. McAlister saw the claimant six times over four months, then stated that he had compared Dr. McAlister's Mental Medical Source Statement ("MSS") with the progress notes, but found that the progress notes did not reflect the marked limitations noted in the MSS. The ALJ then stated that he gave more weight to the state examining physician's opinion which found that the claimant only had moderate limitations and was consistent with his extensive evaluation of the claimant, his medical history, and the opinion of a state non-examining physician. (Tr. 735-736). As to Mr. Gandy, the ALJ summarized the treatment notes, and noted that he was an "other source" to be weighed under Soc. Sec. Rul. 06-03p. (Tr, 725-727, 736). The ALJ found that Mr. Gandy's opinion was not supported by his own progress notes, and that his opinion was "so wanting that it clearly fails the evidentiary weight analysis demanded by 404.1527/416.916." Additionally, the ALJ noted that it was at this treatment facility that

the claimant had obtained additional prescriptions for Valium such that he obtained triple the prescribed dosage.  (Tr. 736).

The ALJ is only required to assign controlling weight to the medical opinion of a treating physician if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  But if a medical opinion is not entitled to controlling weight, the ALJ nevertheless must determine the proper weight to give it by analyzing all of the factors set forth in 20 C.F.R. § 404.1527.  *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 and Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).  The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *See Watkins*, 350 F.3d at 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  And if the ALJ does reject a treating physician's opinion, he must provide

"specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 [citations omitted] [quotations omitted].  The ALJ's conclusion "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

The ALJ's treatment of Dr. McAlister's opinion meets these standards.   He declined to assigned controlling weight to Dr. McAlister's opinion, then explained that he was assigning it "little probative value" because:  (i) Dr. McAlister only saw the claimant six times; (ii) the claimant's contact with Dr. McAlister was limited in both frequency and duration; (iii) Dr. McAlister proffered no evidence or even statements to support the MSS he submitted; and (iv) the severe limitations described in the MSS were inconsistent with his own treatment notes that the claimant was responding to treatment and doing well, as well as the preponderance of the other medical evidence in the record which included a non-service pension from the VA based solely on physical impairments.  (Tr. 735-736).  *See, e. g.*, *Griner v. Astrue*, 281 Fed. Appx. 797, 800 (10th Cir. 2008) (noting that "'a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence.'") [unpublished opinion], *quoting Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).  The Court therefore concludes that the ALJ relied on sufficient evidence in rejecting Dr. McAlister's opinion as to the claimant's functional limitations.   Additionally, the ALJ's opinion was sufficiently clear for the Court to determine the weight he gave to Dr. McAlister's opinion, as well as the reasons for the weight.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided

good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.").

The ALJ properly characterized Mr. Gandy's opinion as "other source" evidence. *See* 20 C.F.R. § 416.913(d) ("Other sources include, but are not limited to . . . therapists.").  S*ee also Holcomb v. Astrue*, 389 Fed. Appx. 757, 759 n.2 (10th Cir. July 22, 2010) (assuming without deciding that licensed professional counselors can also be considered "other sources").  Further, Social Security regulations provide for the proper consideration of "other source" opinions such as Mr. Gandy's.  *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1; Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator *must consider* and what the adjudicator *must explain* in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [emphasis added].

The relevant factors for evaluating opinion evidence from other sources are:  1) the length of the relationship and frequency of contact, 2) whether the opinion is

consistent with other evidence, 3) the extent the source provides relevant supporting evidence, 4) how well the source's opinion is explained, 5) whether the claimant's impairment is related to a source's specialty or area of expertise, and 6) any other supporting or refuting factors.  *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d).  In evaluating Mr. Gandy's opinion, the ALJ found no support in either the medical record or Mr. Gandy's own handwritten progress notes for marking the claimant so moderately/markedly impaired and concluded that his opinion was "so wanting that it clearly fails the evidentiary weight analysis demanded by 404.1527/416.916."  (Tr. 736). Additionally, the ALJ noted that it was at this treatment facility that the claimant had obtained additional prescriptions for Valium such that he obtained triple the prescribed dosage.  The ALJ thus gave due consideration to Mr. Gandy's opinion, and ensured that the Court could follow his reasoning.  Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning"); *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (noting that opinions from "other sources" are not entitled to the same weight as that of other physicians).  The Court therefore finds no error on the ALJ's part.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

**DATED** this 7th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma